1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

11  MARIANNE SPINELLI,               Case No. CV 23-8090 PVC

12              Plaintiff,           **FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER BENCH TRIAL**

13        v.

14
     UNITED STATES OF AMERICA,
15
                 Defendant.
16

17

18                                    **I.**

19                            **INTRODUCTION**

20

21        Plaintiff Marianne Spinelli (Plaintiff) brings this action under the Federal Tort

22  Claims Act (FTCA) against Defendant United States of America (Defendant) for damages

23  she alleges to have sustained after she tripped and fell in the parking lot of the United

24  States Postal Service (USPS) post office in the City of Tujunga on the afternoon of July

25  21, 2022.[1]  She alleges that upon exiting her vehicle and walking toward the Post Office,

26

27        [1] Plaintiff also included Does 1–10 in her First Amended Complaint (FAC) (Dkt. No.
    15) but failed to name them or initiate service of process within the time required by Fed.
28  R. Civ. P. 4(m).  Accordingly, Does 1–10 are DISMISSED WITH PREJUDICE.

she stepped on a dangerous condition (a depression or divot), which caused her to lose her balance, stumble forward, trip over a parking stop, fall on the ground, and sustain significant injuries.  (FAC ¶¶ 8–13).  She asserts a single cause of action: negligence under a premises liability theory.  (*Id.* ¶¶ 14–22).  Plaintiff seeks damages in a total amount of $500,000.

The parties consented to the Court's jurisdiction on March 4, 2025, under 28 U.S.C. § 636(c) and Fed. R. Civ. P 73(b), including the entry of final judgment.  (Dkt. Nos. 54, 55).  A bench trial was held on May 20 and 21, 2025.  (Dkt. Nos. 70, 71).  The Court heard the testimony of various witnesses and exhibits were admitted.  (*See* Dkt. Nos. 72, 73).  The case is now before the Court for a final verdict and judgment, under Fed. R. Civ. P. 52(a).  Post-trial briefs were submitted by both Plaintiff and Defendant on July 21, 2025.  (Dkt. Nos. 79, 80).

After reviewing all the evidence, including the testimony at trial, exhibits admitted, and all written submissions including pre-trial and post-trial briefs, the Court makes the following Findings of Fact and Conclusions of Law.  Any finding of fact that constitutes a conclusion of law is adopted as a conclusion of law, and any conclusion of law that constitutes a finding of fact is adopted as a finding of fact.  To the extent that there were factual conflicts at trial, the Court resolves those conflicts in the manner reflected in the Court's Findings of Fact set forth below.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.

## FINDINGS OF FACT

### A.   Admitted Facts

1.      On July 21, 2022, Plaintiff was lawfully on the premises of the United States Post Office, located at 10209 Tujunga Canyon Boulevard, Tujunga, California 91042 ("Tujunga Post Office").  (Dkt. No. 66 at 3; Tr. 2 at 5).[2]

2.      On July 21, 2022, Plaintiff drove her car, a compact sports utility vehicle, starting at her home located 7032 Greeley Street, Tujunga, California, to the Tujunga Post Office.  (*Id.*).

3.      On July 21, 2022, Plaintiff entered the premises of the Tujunga Post Office when she drove her car into the parking lot.  (*Id.*).

4.      The incident occurred on July 21, 2022.  (*Id.*).

5.      On July 21, 2022, Plaintiff was transported by an ambulance from the Tujunga Post Office to a medical facility.  (Dkt. No. 66 at 3; Tr. 2 at 5–6).

---

[2] References to the Trial Transcripts are designated as "Tr. 1" and "Tr. 2" to identify the day of trial.  The trancripts from May 20, 2025 (Dkt. No. 76) are "Tr. 1" and the transcripts from May 21 (Dkt. No. 77) are "Tr. 2."  Exhibits offered and admitted into evidence are identified as "PX" (Plaintiff's exhibit) and "DX" (Defendant's exhibit) followed by the exhibit number.

1    **B.    Stipulated Facts**

2

3    6.    Plaintiff is not seeking to recover lost wages, a loss of earning capacity, or a

4    loss of property, as damages.  (Dkt. No. 66 at 3; Tr. 2 at 6).

5

6    7.    Plaintiff has limited the amount of her recovery of past medical expenses in

7    this action to the amount $20,971.82, which reflects the amounts paid by Plaintiff's health

8    insurers to fully satisfy the medical expenses she incurred.  (*Id.*).

9

10    **C.    Testimony of Marianne Spinelli**

11

12    8.    On the afternoon of July 21, 2022, a hot, sunny, and clear day, Plaintiff

13    drove herself to the Tujunga Post Office and parked her white Honda CRV in the second

14    space from the left in the customer parking lot.  (Tr. 1 at 26, 70).  Plaintiff was familiar

15    with the Tujunga Post Office parking lot, having visited twice per month since the 1980s.

16    (Tr. 1 at 62–63).

17

18    9.    Plaintiff initially testified that she got out of her car, started to walk, and

19    stepped into a "big hole" in the foundation of the ground which caused her to stumble

20    forward, lose her balance, trip over the parking stop, and fall on her right side.  (Tr. 1 at

21    26–27).  Later, when shown a picture of the area, she identified her vehicle, the "big hole"

22    she stepped into before tripping over the parking stop, and said that she usually does not

23    pay attention to the depressions on the ground and did not notice it.  (Tr. 1 at 27–28, 34;

24    PX-0014 [red squares]).  Plaintiff testified that she did not look down at the ground before

25    she started walking but lost her balance, which caused her to fall over the parking stop.

26    (Tr. 1 at 72).

27

28

10.     After the fall, Plaintiff was unable to get up due to severe pain and was assisted by a bystander who attempted to help her by retrieving Plaintiff's phone so she could contact her partner, David Haller.  (Tr. 1 at 27, 35–36).

11.     Mr. Haller arrived within five minutes and Plaintiff was taken by ambulance to Glendale Adventist Hospital.  (Tr. 1 at 36–37).

12.     Plaintiff told her doctor at Glendale Adventist that she tripped over the concrete parking block at the post office and did not tell her doctor that she tripped over a "depression."  (Tr. 1 at 74–75; *see* DX-0128 [emergency department report]).

13.     At the hospital, Plaintiff underwent orthopedic surgery on her right hip.  (Tr. 1 at 39).  She was discharged and received post-surgery rehabilitation and therapy.  (Tr. 1 at 41–42).  Plaintiff testified about her pain and discomfort, difficulty walking, depression, and other effects as a result of her injury and surgery. (Tr. 1 at 44, 46, 50).

### D.     <u>Testimony of David Haller</u>

14.     Mr. Haller is Plaintiff's cohabitant partner and first learned about the incident when she called him.  (Tr. 1 at 86).  When he arrived at the post office, he saw Plaintiff laying down on her back, crying and covered in sweat.  (Tr. 1 at 87).  Mr. Haller tried to get Plaintiff into his vehicle to help her cool off. (Tr. 1 at 87–88).   He called 911 and an ambulance arrived and took Plaintiff to the hospital.  (Tr. 1 at 88–89).

15.     Weeks after the fall, Mr. Haller returned to the post office and took a photograph of the parking lot where Plaintiff fell, noting a dent in the concrete, which he later showed Plaintiff.  (Tr. 1 at 93–94).  She said, "maybe that's what caused me to lose

my balance, I don't know." (Tr. 1 at 94). Prior to seeing the photograph, Plaintiff had not mentioned any indentation in the concrete. (Tr. 1 at 103–04).

16.   Mr. Haller assisted Plaintiff with her recovery, noting that her physical capabilities were reduced and that she was depressed. (Tr. 1 at 95–102).

### E.   Testimony of USPS Employee Kenroy Martinez

17.   Kenroy Martinez was the supervisor at the Tujunga Post Office on the day of the incident. (Tr. 2 at 9). He approached Plaintiff in the parking lot, where she told him that she had tripped and fallen over the concrete parking block and landed on her right hip. (Tr. 2 at 10). He took a photograph which depicts Plaintiff's white Honda CRV on the right and the area where he found Plaintiff on the ground. (Tr. 2 at 12; DX-0100). He also took another photograph which depicts another angle of Plaintiff's vehicle and the location where he found Plaintiff lying on the ground. (Tr. 2 at 13; DX-0101). Neither photograph indicates that there was any debris in the parking lot where Plaintiff would have walked.

18.   Upon walking up to Plaintiff, Mr. Martinez asked if she was okay. Plaintiff stated that she tripped and fell and landed on her right hip. (Tr. 2 at 10). Plaintiff said she tripped over the parking block. (*Id*.). After Plaintiff was taken away in an ambulance, Mr. Martinez prepared an "accident form" (USPS Form 1700), indicating that Plaintiff "tripped over cement block (parking block)." (Tr. 2 at 14–16; DX-0129).

### F.   Testimony of USPS Employee Carlos Gutierrez

19.   Postmaster Carlos Gutierrez, Defendant's Fed. R. Civ. P. 30(b)(6) witness, testified at trial that he sent a maintenance request via email in August 2023 indicating

6

that the parking lot was full of holes due to rain and age.  Mr. Gutierrez followed up on

this request in September and was told that there was no need for repaving the parking lot

and that there was no safety issue for cars or pedestrians.  Mr. Gutierrez replied that he

had customers complaining weekly about this issue and that one customer had already

tripped "with the holes."  (Tr. 1 at 199–203; PX-0031).

20.     Postmaster Gutierrez stated that the email was a "a little white lie," which he

reported to appease the customer who complained about the parking lot.  (Tr. 1 at 201).

Mr. Gutierrez said that in the five years prior to the incident, he did not know of any

maintenance conducted on the parking lot.  (Tr. 1 at 204).  Other than Plaintiff, no one

else has reportedly tripped because of an indentation in the parking lot.  (Tr. 1 at 210,

213).

### G.     Expert Testimony of Mark Burns

21.     Mark Burns, Plaintiff's forensic expert, was retained to conduct a site

inspection, to review documents, including photographs taken on the day of the incident,

incident reports, deposition testimony, written discovery and also to research applicable

safety standards, including those proffered by the USPS, i.e., their safety manuals and

finally offer opinions based on his analysis of the case regarding premises safety, risk

management, and accident reconstruction.  (Tr. 1 at 106–07).

22.     Burns conducted his site inspection on August 17, 2022, 27 days after

Plaintiff fell in the Tujunga Post Office parking lot.  (Tr. 1 at 108).[3]  He concluded that the

parking lot depression at issue was 1 5/8 inch deep and had a slope ranging from 20–29%.

(Tr. 1 at 109–10; PX-0019 at 14–15, 19–20 [slides 25–28, 36–41]).

---

[3] Burns incorrectly calculated the time from incident to inspection as "21 days."  (Tr. 1 at 108).

23.     Burns opined that: (1) the defect at issue presented a misstep hazard, (2) the incident occurred when Plaintiff unexpectedly encountered the defect, (3) the Tujunga Post Office had an obligation to inspect and maintain its property, (4) the Tujunga Post Office failed to properly inspect and maintain the parking lot, and (5) the parking lot could easily have been made safer.  (Tr. 1 at 110–15).

24.     On cross examination, Burns acknowledged that while the 1 5/8 inch depression is the lowest spot that he measured, he does not know whether Plaintiff stepped on that spot—or on any depression—on the date of her accident.  (Tr. 1 at 147, 149).  Indeed, he measured the 1 5/8 depression *perpendicular* to where Plaintiff would have walked after getting out of her car.  (*Id.*).  The only depression Burns measured in the direction going forward from Plaintiff's car measured 1 3/16 inch.  (Tr. 1 at 148; PX-0019 at 16–17 [slides 29–32]).

### H.    Expert Testimony of Jeffrey Suway

25.     Jeffrey Suway, Defendant's rebuttal expert, reviewed Mr. Burns' report, measurements of the Tujunga Post Office parking lot surface, medical records, discovery responses, photos of the location, studies, and literature to conduct his own analysis of the parking lot surface.  (Tr. 2 at 26–27; *see* DX-0114).

26.     He testified that the elevation changes at the Post Office parking lot are easily seen and detected by an average, alert pedestrian, and that an attentive pedestrian would be able to safely navigate any elevation changes in the parking spots of the parking lot.  (Tr. 2 at 32–35, 40).  These elevation changes have been around since at least 2008, as demonstrated by historical street view images.  (Tr. 2 at 35; *see* DX-0114-8 & -9).  He opined that these elevation changes are not a dangerous condition or hazard.  (Tr. 2 at 43).

27.    Suway evaluated all of the elevation changes in the walkway to the left of where Plaintiff's car was parked and concluded that the total elevation change in the Tujunga Post Office parking lot where Plaintiff likely stepped was less than one inch.  (Tr. 2 at 37–40; *see* DX-0114-12 & -13).

## I.    Expert Testimony of Dr. Jason Snibbe

28.    Dr. Jason Snibbe, Defendant's medical expert and a board certified orthopedic surgeon, conducted an independent medical examination of Plaintiff in September 2024 and reviewed her medical records and x-rays.  (Tr. 2 at 171–72).

29.    On July 22, 2022, Plaintiff underwent hip surgery at Glendale Adventist that was performed by orthopedic surgeon Dr. Ryan Morgan.  (Tr. 1 at 38–39).  Dr. Snibbe noted that Plaintiff's medical providers diagnosed her with a displaced intertrochanteric femur fracture, for which she received an open reduction internal fixation surgery from Dr. Morgan.  (Tr. 2 at 175–76).  Based on his review of the medical records, Dr. Snibbe concluded that the surgery was successful, that the fracture properly healed, and that Plaintiff did not develop any post-traumatic arthritis in her right hip.  (Tr. 2 at 176–79). Based on his September 2024 examination, Dr. Snibbe opined that Plaintiff would not require any future surgical intervention for her hip because she had insignifican stiffness affecting only 10 degrees of motion.  (Tr. 2 at 181).

30.    On examination, Dr. Snibbe found that Plaintiff suffered from a valgus deformity in her right knee caused by medically significant arthritis in the knee.  (Tr. 2 at 174, 182).  Dr. Snibbe concluded that the right knee valgus deformity was the cause of Plaintiff's antalgic gait.  (Tr. 2 at 172, 185).  He opined that a valgus deformity would typically take ten years to develop in a patient, meaning that Plaintiff had pre-existing

osteoarthritis and a valgus deformity of her right knew which occurred prior to the incident.  (Tr. 2 at 184).

### III.

### STANDARDS OF REVIEW

#### A.    Jurisdiction and Venue

This Court has subject matter jurisdiction over this civil Federal Tort Claims Act (FTCA) matter under 28 U.S.C. § 1346(b).  Venue lies in this District and this Division pursuant to 28 U.S.C. § 1391(b).

#### B.    Bench Trial Standards

"Rule 52(a) requires the district court's findings to be explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision." *Zivkovic v. S. California Edison Co*., 302 F.3d 1080, 1090 (9th Cir. 2002) (citation omitted). "When deciding a motion under Rule 52(c), the district court is not required to draw any inferences in favor of the non-moving party; rather, the district court may make findings in accordance with its own view of the evidence." *Lee v. W. Coast Life Ins. Co.*, 688 F.3d 1004, 1009 (9th Cir. 2012) (citation omitted).  Thus, "In a trial on the record, … the judge can evaluate the persuasiveness of conflicting testimony and decide which is more likely true." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999).

1

    **C.**   <u>**Legal Standards**</u>

2

3            Under the FTCA, a claim must arise from the negligent or wrongful act of a

4  government employee acting within the scope of his or her employment under the

5  circumstances where the United States, if it were a private individual, would be liable

6  under the State where the claim arose.  28 U. S. C. § 1346(b).  Here, as the incident

7  occurred in California, California law applies.  *See Conrad v. United States*, 447 F.3d 760,

8  767 (9th Cir. 2006) ("In assessing the United States' liability under the FTCA, we are

9  required to apply the law of the state in which the alleged tort occurred.").

10

11           To establish negligence under California law, Plaintiff must demonstrate by a

12  preponderance of the evidence: (1) a legal duty to use due care; (2) a breach of that duty;

13  and (3) the breach as a proximate or legal cause of the resulting injury.  *Jackson v. Ryder*

14  *Truck Rental, Inc.*, 16 Cal. App. 4th 1830, 1837 (1993).  Premises liability is a form of

15  negligence.  *Brooks v. Eugene Burger Mgmt. Corp.*, 215 Cal. App. 3d 1611, 1619 (1989);

16  *see* Cal. Civ. Code § 1714 ("Everyone is responsible, not only for the result of his or her

17  willful acts, but also for an injury occasioned to another by his or her want of ordinary

18  care or skill in the management of his or her property or person, except so far as the latter

19  has, willfully or by want of ordinary care, brought the injury upon himself or herself.").

20  In California, the elements of a premises liability claim are: (1) defendant owned, leased,

21  occupied or controlled the property; (2) defendant was negligent in the use or maintenance

22  of the property; (3) plaintiff was harmed; and (4) defendant's negligence was a substantial

23  factor in causing plaintiff's harm.  *Rodriguez v. United States*, No. 2:14-cv-04941-AJW,

24  2017 WL 924458, at *2. (C.D. Cal. Mar. 6, 2017) (citing Judicial Council of California

25  Civil Jury Instructions (CACI) 1000 (2025)).  Where the dangerous condition is a

26  concealed defect, the "failure to warn or to repair the condition constitutes negligence."

27  *Rowland v. Christian*, 69 Cal. 2d 108 (1968).  But there is no duty to warn of obvious

28

dangerous conditions. *See Jacobs v. Coldwell Banker Residential Brokerage Co*., 14 Cal. App. 5th 438, 446 (2017); *Wylie v. Gresch*, 191 Cal. App. 3d 412, 423 (1987).

The plaintiff bears the burden of proof as to each element. Thus, Plaintiff must prove by a preponderance of the evidence that the negligent conduct of Defendant was a substantial factor in bringing about her injury. *See Urias v. U.S.,* No. 2:22-cv-01680-KK-PVC, 2024 WL 2132510, at *9 (C.D. Cal. May 13, 2024) (citing *Liberty Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co*., 5 Cal. 5th 216, 223 (2018)). To satisfy her burden, Plaintiff "must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." *Ortega v. Kmart Corp*., 26 Cal. 4th 1200, 1205–06 (2001) (citation omitted).

## IV.

## CONCLUSIONS OF LAW[4]

Plaintiff did not meet her burden of proof to establish that Defendant is liable on her premises liability claim. Plaintiff contemporaneously reported to USPS employee Martinez and to medical staff when she arrived at the hospital that she tripped over the concrete parking block in the parking lot. FOF 12, 17–18. But the concrete parking block was an obvious dangerous condition. *See Jacobs*, 14 Cal. App. 5th at 446 (finding no duty to warn of obvious dangerous conditions). "Parking stops like those in the [Tujunga] Post Office's parking lot are familiar to anyone who drives (especially someone like Plaintiff who has parked in the Post Office parking lot hundreds of times [FOF 8]) and, unlike water in a shopping aisle, are expected to be in precisely the location Plaintiff

---

[4] References to the Court's Findings of Fact, *supra* § II, are designated as "FOF."

encountered this parking stop—at the end of a parking space." *Quintana v. United States*, No. 5:17-cv-02095-DMG-SHK, 2018 WL 6444891 at \*4 (C.D. Cal. Nov. 14, 2018).

Nevertheless, the California Supreme Court instructs that "a dangerous condition exists when public property is physically damaged, deteriorated, or defective in such a way as to foreseeably endanger those using the property itself." *Bonanno v. Central Contra Costa Transit Auth.*, 30 Cal. 4th 139, 148–49 (2003), as modified (Apr. 7, 2003). Moreover, "public property has also been considered to be in a dangerous condition because of the design or *location* of the improvement, the interrelationship of its structural or natural features, or the presence of latent hazards associated with its normal use." *Id.* at 149 (citation omitted). Here, however, Plaintiff submitted no evidence that the parking stop was damaged, deteriorated, or defective and was an obvious condition, not concealed to customers. "Thus, [the parking blocks at the Tujunga Post Office] constitute open and obvious dangers, if considered a danger at all." *Ballardo v. Costco Wholesale Corp*., No. LA CV23-02326 JAK (JPRX), 2024 WL 4868269, at \*7 (C.D. Cal. Aug. 15, 2024).

Several weeks after the incident, Plaintiff first speculated that an indentation in the parking lot caused her fall, not the concrete parking block. Weeks after Plaintiff's accident, her partner David Haller returned to the post office and took a photograph of the parking lot where Plaintiff fell, noting a dent in the concrete, which he later showed Plaintiff. FOF 15. Plaintiff stated, "*maybe* that's what caused me to lose my balance, *I don't know*." *Id.* (emphasis added). But prior to seeing the photograph, Plaintiff had never surmised that an indentation in the parking lot caused her fall. *See id.* Nevertheless, at trial, Plaintiff testified that she got out of her car, started to walk, and stepped into a "big hole" in the foundation of the ground which caused her to stumble forward, lose her balance, and trip over the parking stop. FOF 9. When shown a picture taken shortly after her accident, Plaintiff identified the "big hole" as being just to the left of her front left tire. *Id.* The Court finds, however that Plaintiff has not met her burden to

establish that her fall was caused by the defect on the ground, especially given her initial statements on the day of the incident that she tripped over the concrete parking block.

And even if Plaintiff stepped in an indentation prior to falling over the concrete parking block, she has not met her burden to establish that the indentation was nontrivial. "The duty of care imposed on a property owner, even one with actual notice, does not require the repair of minor defects." *Kasparian v. AvalonBay Communities, Inc.*, 156 Cal. App. 4th 11, 27 (2007) (citation omitted). "Although sometimes referred to as the trivial defect defense, the trivial defect doctrine is not an affirmative defense but rather an aspect of duty plaintiff must plead and prove." *Id.* (citation omitted). "Moreover, what constitutes a minor defect may be a question of law." *Cadam v. Somerset Gardens Townhouse HOA*, 200 Cal. App. 4th 383, 388–89 (2011), as modified (Oct. 28, 2011); *see Boogren v. Costco Wholesale Corp.*, No. EDCV191744DMGKKX, 2020 WL 11772531, at *3 (C.D. Cal. Nov. 18, 2020) ("Trivial defects are minor deformities that, as a matter of law, are not dangerous."). Whether a defect meets the trivial defect doctrine involves several steps:

> First, the court reviews evidence regarding the type and size of the defect. If that preliminary analysis reveals a trivial defect, the court considers evidence of any additional factors such as the weather, lighting and visibility conditions at the time of the accident, the existence of debris or obstructions, and plaintiff's knowledge of the area. If these additional factors do not indicate the defect was sufficiently dangerous to a reasonably careful person, the court should deem the defect trivial as a matter of law and grant judgment for the landowner.

*Stathoulis v. City of Montebello*, 164 Cal. App. 4th 559, 567–68 (2008).

14

Plaintiff's expert opined that the parking lot depression at issue was 1 5/8 inch deep. FOF 22. But on cross examination, the expert acknowledged that while 1 5/8 inch is the lowest spot that he measured, he does not know whether Plaintiff stepped on that spot—or on any depression—on the date of her accident. FOF 24. Indeed, the Court finds that the spot measured by Plaintiff's expert was underneath where Plaintiff parked her car, making it impossible for her to have stepped on it. FOF 22, 24. (*Compare* PX-0014 [photo of Plaintiff's car on day of incident], *with* PX-0019 at 14–15 [slides 25–28], indicating where expert measured the 1 5/8 inch indentation]). The expert measured another indentation with a 1 3/16 inch depth, FOF 24, but this spot appears to be either underneath where Plaintiff's car's left tire would have been or so close to the left tire that Plaintiff would not have stepped in it.

The Court finds Defendant's expert's opinion more persuasive. He evaluated all of the elevation changes in the walkway to the left of where Plaintiff's car was parked and concluded that the total elevation change in the Tujunga Post Office parking lot where Plaintiff likely stepped was less than one inch. FOF 27.

The Court determines as a matter of law that the indentation stepped in by Plaintiff was trivial. All of the indentations identified by the parties' experts that were plausibly in the walkway to the left of Plaintiff's car were less than 1½ inches. FOF 24, 27. Multiple courts have found that height differentials of up to 1½ inches "trivial as a matter of law." *Stathoulis*, 164 Cal. App. 4th at 568 (collecting cases); *accord Boogren*, 2020 WL 11772531, at *3; *see also Mosley v. Target Corp.*, No. 2:11-CV-00440-GEB, 2012 WL 5543685, at *3 (E.D. Cal. Nov. 14, 2012) (finding indentations less than one inch to be trivial as a matter of law and collecting cases). Moreover, Plaintiff has not established any additional factors that would have made the otherwise trivial defect dangerous. She testified that the day of her accident was hot, sunny, and clear. FOF 8. The photograph taken contemporaneously by the USPS employee indicates that the walkway next to

Plaintiff's car was clear of debris.  FOF 17.  And Plaintiff was intimately knowledgeable of the Tujunga Post Office parking lot, having visited the parking lot twice per month since the 1980s.  FOF 8.

## V.

## VERDICT

For all these reasons, the Court concludes that Plaintiff failed to prove her premises liability claim against Defendant.  She failed to establish by a preponderance of the evidence that the depression or defect in the parking lot is what caused her fall.  Any indendation that she stepped in was as trivial defect as a matter of law.  Judgment will be entered in favor of Defendant and against Plaintiff.  The Court will issue a judgment under Fed. R. Civ. P. 58, consistent with these Findings of Fact and Conclusions of Law.

DATED:  December 18, 2025

_____

PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE

16